IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

HENRY W. ALTEVOGT,

      Plaintiff,

         v.                   CIVIL NO.: WDQ-11-1061

WILLIAM E. KIRWAN, *et al.*,

      Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Henry Altevogt, without a lawyer, sued the University of Maryland, Baltimore City ("UMBC") and UMBC officials (collectively, "defendants") for defamation and employment discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*. For the following reasons, the defendants' motion to dismiss must be granted with prejudice. Altevogt's motion to appoint counsel will be denied.

I.    Background[1]

In April 1995, Altevogt, who is about 60 years old, was employed by the University of Maryland, Baltimore County ("UMBC") as a landscape technician. ECF No. 16 at 5, 7. When

---

[1] For the motion to dismiss, the well-pled allegations in Altevogt's amended complaint are accepted as true. *See Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993).

he was hired, "the position required a [four] year college degree." *Id.* at 7.  He alleges that in 1998 UMBC "dropped" the degree requirement to hire "Charles Hogan, who was under 40 years old and had no college degree." *Id.*

Altevogt alleges that he "suffered job related back and shoulder injuries in 1998 and [his] duties were adjusted until October 2006" to accommodate those disabilities. *Id.* at 5.  In October 2006, UMBC "refused to honor" Altevogt's physical limitations when Donna V. Anderson, a new grounds manager, assigned Altevogt to tasks which were "injurious to [his] back and shoulder." *Id.*  In December 2006, Anderson made Altevogt "move very heavy concrete cigarette urns," causing further "injury to his back." *Id.* at 6.  After the injury, Anderson took Altevogt's "state credit card[,] which [he] had managed properly for many years," and gave it to Warren Johnson, a younger employee. *Id.* at 6, 7.  She removed Altevogt from landscaping duties and assigned him to collect trash, "which was not in [his] job description" and required him to bend over, hurting his back. *Id.* at 6.

Anderson allowed Hogan and another younger employee "to be late for work almost every day."  Hogan was also permitted to "abuse his sick leave," as he was not reprimanded when he was caught calling in sick while working for a private subcontract-or in violation of UMBC policy. *Id.* at 7.  Anderson also failed

2

someone." *Id.* at 9.  Donlan placed Altevogt on administrative leave and sent him to "a doctor . . . who determined that [he] was able to return to work on [July 16, 2008]." *Id.* at 8. Donlan did not allow him to return to work until September 16, 2008.  *Id.*[3]  On August 16, 2008, Donlan "assured [Altevogt that he] was on administrative leave," but later stated that Altevogt had been suspended without pay during the first week of his leave.  *Id.* at 7.

When he returned to work, Altevogt learned that "UMBC campus police [had] question[ed his] coworkers about [his] character."  *Id.* at 9.  Altevogt alleges that he "was the subject of slanderous gossip," because a coworker told him "[e]veryone . . . was jealous of [Altevogt] for having been on administrative leave for 42 days."  *Id.*  Donlan held a "welcome back meeting which humiliated and really singled [Altevogt] out from the other employees," and demoted him.  *Id.*

Altevogt alleges that in 2008, another older UMBC employee was forced to retire.  *Id.* at 8.  On about November 10, 2008, Altevogt asked to take five days of family leave time.  When Donlan denied the request, Altevogt told him he would take the leave without pay.  Donlan terminated him.  *Id.*

_____

[3] Elsewhere in the complaint, Altevogt states that he was not allowed to return to work until November 8, 2008.  *See* ECF No. 16 at 9.

Altevogt has been unable to find a new job.  *Id.* at 9.

On March 9, 2009, Altevogt filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on his disability.[4]  ECF No. 16 at 3; ECF No. 6, Attach. 2 at 3.  In his explanation of the alleged discrimination, Altevogt wrote that he "was diagnosed with a disability in August 2007," in 2008 he applied for a "new position" but was denied an interview, and in July 2008 he was placed on administrative leave.  *Id.*  He stated that he believed he had "been discriminated against in violation of Title I of the Americans with Disabilities Act of 1990."  *Id.*  On February 4, 2011, the EEOC issued a right to sue notice.  ECF No. 1, Attach. 1.

On April 20, 2011, Altevogt filed a *pro se* complaint in this Court alleging that the defendants had violated the ADA and ADEA.  ECF No. 1.  On August 11, 2011, the Court granted the defendants' motion to dismiss the complaint without prejudice and gave Altevogt 21 days to rewrite his complaint in accordance with the Court's memorandum opinion.  ECF No. 15; ECF No. 14 at 1.  On August 30, 2011, Altevogt filed an amended complaint, alleging defamation and violations of the ADA and ADEA, and moved for appointment of counsel.  ECF No. 16; ECF No. 17.  On

---

[4] Altevogt alleged that he filed the EEOC charges on March 9, 2009, ECF No. 16 at 3, but he dated the EEOC charge form September 18, 2009, ECF No. 6, Attach. 2 at 3.

September 7, 2011, the defendants moved to dismiss the amended complaint.   ECF No. 19.   On September 23, 2011, Altevogt opposed the motion to dismiss.   ECF No. 22.

II.  Analysis

A.   Altevogt's Motion to Appoint Counsel

Altevogt requests appointment of counsel because he cannot afford to retain his own attorney, and he contends that it is unfair that, as a Maryland taxpayer, he helps fund his adversary's defense.   ECF No. 17 at 1.

Under 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person [proceeding *in forma pauperis*] unable to afford counsel."   In civil actions, the Court will request appointment of counsel "only in exceptional cases." *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975).   The Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (internal quotation marks and citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989).

Exceptional circumstances include a litigant who "is barely able to read or write," *id.*, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008).   That a litigant lacks

6

funds to hire counsel and was unfamiliar with the substantive law before filing his complaint is not exceptional. *Id.; Brock v. City of Richmond*, 52 F.3d 320 (table), 1995 WL 231832 at *2 (4th Cir. Apr. 20, 1995). "Clearly most pro se litigants will face difficulty . . . because they lack the legal knowledge and education of a trained attorney." *Brock*, 1995 WL 231832 at *2. A litigant who has "presented his claims, filed motions, and opposed motions by other parties" is probably not entitled to appointed counsel. *McCoy v. Filbert*, No. 00-0047, 2000 WL 34510227 at *1 (D. Md. Nov. 9, 2000). That the issues in the case are "clearly defined and relatively uncomplicated" weighs against appointment of counsel. *Brock*, 1995 WL 231832 at *2.

Altevogt's inability to retain counsel is not an exceptional circumstance. His presentation of his claims, ability to file motions in this litigation, and to respond to the defendants' motions demonstrate that appointment of counsel is not necessary. *See McCoy*, 2000 WL 34510227 at *1. Finally, as discussed below, his claims lack merit. Altevogt's motion for appointment of counsel will be denied.

> B.    The Defendants' Motion to Dismiss

> 1.    Standards of Review

> i.    Exhaustion of Administrative Remedies

When a plaintiff fails to exhaust administrative remedies concerning an ADEA claim, the federal courts lack subject matter

jurisdiction over that claim and must dismiss it. *Jones v. Calvert Grp. Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). In determining whether it has jurisdiction, the court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005).

### ii. Failure to State a Claim

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Midgal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (*quoting Twombly,* 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 1950. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

    2.    ADEA Claim

The Defendants argue that because Altevogt's EEOC charge mentioned only disability discrimination, he has not exhausted his administrative remedies as to the age discrimination claim. ECF No. 20 Attach. 1 at 6.

"Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent [ADEA] lawsuit." *Jones,* 551 F.3d at 300. When the EEOC charge "fail[s] . . . to make any reference" to an ADEA claim, the claimant has not exhausted his administrative remedies before the EEOC, and the

court must dismiss the charge for lack of subject matter jurisdiction.  *See Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) (considering retaliation claim); *Talbot v. U.S. Foodservice, Inc.*, 191 F. Supp. 2d 637, 640 (D. Md. 2002) (ADA claim).

In his EEOC charge, Altevogt checked the box for discrimination based on his disability.  ECF No. 6 Attach. 2 at 3.  He did not mention his or anyone else's age in his explanation of the charges or elsewhere on the form.  *Id.*  As the charge did not mention age discrimination, "the EEOC cannot reasonably have been expected to have investigated disability discrimination."  *Talbot*, 191 F. Supp. 2d at 640.  Accordingly, Altevogt did not raise his ADEA claim with the EEOC and failed to exhaust his administrative remedies before bringing suit.

As the Court lacks subject matter jurisdiction over Altevogt's ADEA claim, "the only function remaining to the court [i]s that of announcing the fact and dismissing the cause[]."  *Jones*, 551 F.3d at 301 (*quoting Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).  Altevogt's ADEA claim will be dismissed.

3.   Sovereign Immunity

The defendants contend that Altevogt's claims against UMBC and the individual defendants in their official capacities are

barred by sovereign immunity under the Eleventh Amendment.   ECF
No. 20 Attach. 1 at 9-10.

The Eleventh Amendment prevents "private individuals" from
suing "nonconsenting States . . . in federal court."   *Bd. of Tr.*
*of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).   Eleventh
Amendment immunity extends to state agencies, "arms of the
State[,] and State officials."[5]   *Cash v. Granville Cnty. Bd. of*
*Educ.*, 242 F.3d 219, 222 (4th Cir. 2001) (*citing Regents of the*
*Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Mt. Healthy City*
*Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).

"[T]he University of Maryland is an arm of the State for
Eleventh Amendment purposes."   *Bickley v. Univ. of Md.*, 527 F.
Supp. 174, 182 (D. Md. 1981).   Accordingly, UMBC employees are
shielded from liability by the Eleventh Amendment because, in
suits against them in their official capacities, they are sued
as representatives of their employer, the state.   *Will v. Mich.*
*Dep't of State Police*, 491 U.S. 58, 71 (1989).[6]

---

[5] The Eleventh Amendment bars suits against a state official in
his or her official capacity because such a suit "is a suit
against the official's office[;] . . . it is no different from a
suit against the State itself."   *Will v. Mich. Dep't of State*
*Police*, 491 U.S. 58, 71 (1989).

[6] *See also Darcy v. Lippman*, No. 03-6898, 2006 WL 3761982, at *4
(S.D.N.Y. Dec. 19, 2006), *aff'd*, 356 F. App'x 434 (2d Cir.
2009).

Congress "may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." *Id.* (internal quotation marks and citation omitted). The States' sovereign immunity has not been abrogated for ADA and ADEA claims. *Id.* (ADA); *Kimel v. Fl. Bd. of Regents*, 528 U.S. 62, 79 (2000). Maryland has not waived its immunity from suits in federal court.[7] *Dixon v. Balt. City Police Dep't*, 345 F. Supp. 2d 512, 513 (D. Md. 2003).[8]

Accordingly, all claims against UMBC must be dismissed because the University is a state agency protected by sovereign immunity from federal suit. To the extent that Altevogt's ADA and ADEA claims charge the individual defendants in their official capacities, the claims are similarly barred and will be dismissed.

> 4.   ADA Claim

As discussed above, UMBC and the individual defendants in their official capacities are immune from suit, and the ADA claim against them must be dismissed. Further, the ADA does not

---

[7] Maryland's Tort Claims Act ("MTCA") waives immunity from certain tort actions "in a court of the State," not in federal court. Md. Code Ann., State Gov't § 12-104.

[8] *See also Tani v. St. Mary's Cnty., Md.*, No. PJM-08-1950, 2011 WL 3821058, at *4 (D. Md. Aug. 25, 2011); Md. Code Ann., State Gov't § 12-101 *et seq.*

authorize suit against individuals for violating its provisions. *Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999).[9]  Accordingly, to the extent that Altevogt sued the individual defendants in their individual capacities, the ADA claim must be dismissed.

> 5.    Defamation

The defendants contend that Altevogt's defamation claim must be dismissed because (1) it is barred by sovereign immunity, (2) Altevogt did not follow the administrative prerequisites to filing an MTCA claim, and (3) he did not allege specific facts supporting his allegations.  ECF No. 20 Attach. 1 at 6, 10, 11.

To allege defamation under Maryland law, the plaintiff must show that: (1) the defendant made a defamatory statement about him to a third party, (2) the statement was false, (3) the defendant was legally at fault in making the statement, and (4) the plaintiff was harmed as a result.  *S. Volkswagen, Inc. v. Centrix Fin.*, 357 F. Supp. 2d 837, 843 (D. Md. 2005).

Altevogt alleged that Gleason "repeated" that Altevogt had told someone "You're on the list, you will be shot," and that the statement was "a complete fabrication."  ECF No. 16 at 9.

---

[9] *See also Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010) ("Title VII, the ADA, and the ADEA . . . do not provide for causes of action against defendants in their individual capacities.") (unpublished).

He also claimed that Donlan said, in the presence of a third party he was worried that Altevogt "might harm someone."

UMBC and its employees in their official capacities are immune from suit in federal court; the claims against them must be dismissed.  Remaining are Altevogt's state-law defamation allegations against Gleason and Donlan in their personal capacities.

When a district court "has dismissed all claims over which it has original jurisdiction," it "may decline" to exercise supplemental jurisdiction over the remaining claims.  28 U.S.C. § 1367(c).  The court "enjoy[s] wide latitude in determining whether or not to retain jurisdiction over state claims." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).

When the court has dismissed employment discrimination claims, the court may decline to exercise supplemental jurisdiction over a remaining Maryland defamation claim against Maryland officials in their individual capacities.  *Coleman v. Md. Court of Apps.*, No. L-08-2464, 2009 WL 8400940, at *2 (D. Md. May 7, 2009), *aff'd*, 626 F.3d 187 (4th Cir. 2010), *cert. granted*, 131 S. Ct. 3059 (2011).[10]  The defamation claim will be dismissed.

---

[10] In *Coleman*, the court dismissed Coleman's Title VII claim against the Maryland Court of Appeals.  It held that his Family Medical Leave Act and defamation claims against the Maryland Court of Appeals and employees in their official capacities were

14

III. Conclusion

For the reasons stated above, the defendants' motion to dismiss will be granted with prejudice.  Altevogt's motion for appointment of counsel will be denied.

_____1/13/12_____
Date

William D. Quarles, Jr.
United States District Judge

---

barred by the Eleventh Amendment.  *Coleman*, 2009 WL 8400940 at *1-2.  It added that:

> [t]o the extent [Coleman] states a claim for
> defamation under Maryland law against [the individual
> defendants] individually and in their personal
> capacities, the Court declines to exercise pendent
> jurisdiction over such claims.  *See* 28 U.S.C. §
> 1367(c)(3).

*Id.* at *2 n.3.